Thank you and good morning everyone. Welcome to our newly refurbished courtroom. We can get started with our first case. I understand everyone is here. Byrd v. Shannon. Ms. Trella. Good morning, Your Honors. May it please the Court. My name is Rebecca Trella and I serve as amicus counsel for under 1915G of the PLRA. My co-counsel, Alex Hanlon, will address why unclear dismissals are not strikes under 1915G. With the Court's permission, I'd like to reserve two minutes for rebuttal. Thank you. Put simply, fee-paid complaints are not strikes under 1915G because Congress never intended for them to be strikes. The legislative testimony behind the PLRA shows that Congress was focused on prisoner abuse of the IFP privilege. To address this problem, Congress passed 1915G, which is a special remedy aimed at limiting indigent prisoners' access to free lawsuits. Do you acknowledge that looking at 1915G, and it's just looking at it, at least viewed in isolation ways against your position? No, Your Honor. Our position is that the statutory language isn't clear either way. The phrase we're talking about is an-action. And the phrase an-action appears several times in the PLRA. Sometimes, as in 1997E and 1915A, it includes all complaints, fee-paid and IFP. And sometimes, as in 1915E, it includes only IFP complaints. So we're here asking the Court to determine whether it's more like 1997E and 1915A. The Seventh Circuit seems to run directly against the argument that you're making. At least in Duvall v. Miller, the Seventh Circuit found that the statutory language of 1915G to be clear, noting that inmates who have brought an action on appeal and does not say brought an action or appeal in form of a purpose. And in that case, the Court concluded that the prisoner who had brought three suits that lacked sufficient merit to get beyond the pleadings were subject to the three-strikes rule. So it doesn't matter whether it's in form of a force or whether the complaint is paid for according to the text of the statute, as Judge Cowan was stressing a moment ago. That's right that the Seventh Circuit concluded that the language is plain on its face. But our position is that it's not plain on its face because of these differing interpretations elsewhere in the PLRA. Yeah, but there would not be a rewriting of the statute. No, Your Honor, it would not. Our position is that the conclusion in Duvall was cursory at best. The Court ignored that the law had been interpreted different ways elsewhere in the PLRA. And moreover, in deciding Duvall, the Court was looking to the precedent of Roe, which had decided that 1915E was not limited to IFP. The Seventh Circuit has since decided differently in Gladney, which is congruent with this Circuit's decision in Grayson limiting 1915E to IFP and creating that tension within the statute of the differing interpretations. The same finding as in Highland, the Sixth Circuit found in, I'm sorry, in Duvall, the Sixth Circuit found in Highland versus Clayton, where it found that it didn't matter whether the complaint or the action was paid or not, but it still counted as three strikes. Can you distinguish those two cases from your position? Yes, Your Honors. In fact, we distinguish all three cases, Duvall, the published case, as well as Highland and Burghardt, the Tenth Circuit case, as all being cursory examinations of the law that did not look to the ambiguity inherent in the statute. It does seem like the weight of jurisprudence is running directly against you. It seems like that. What is your best case for the position that you take? Grayson. This Court's decision in Grayson noted that the phrase, inaction, which had been previously considered in Santana, was at first blush, not dispositive, and that based on the structural component of the law, as well as the legislative history behind the law, that it was, as in 1915E, limited to IFP complaints. The problem with Grayson, though, it applied to another section, did it not? That's right, and that's the section most analogous to the section we're considering today. Isn't the weakness of your argument about that section the fact that that section specifically deals with screening IFP complaints? Our position is that that's not a weakness at all. 1915G uses language that's essentially a copy-and-paste job from 1915E. It uses the phrase frivolous, malicious, or failure to state a claim upon which relief may be granted. Moreover, the structure of the penalty itself reinforces the notion that this provision is limited to IFP. The penalty is not cutting off access to the docket at all. The penalty is lack of access to the IFP process. For somebody who's paying their own way for their own complaints, not having access to the IFP privilege doesn't really matter. It won't affect them. Well, that's a good policy argument if you're looking to create a statute. But as Judge Fischer mentioned, in Grayson, they were only dealing with IFP. To the extent it went beyond IFP, non-IFP filings, it's dicta. There's nothing they didn't have to do. That's dicta that you're relying on in Grayson. You name any case in any circuit, pure and simple, which held that it excludes non-IFP filings. No, Your Honor, there has not been a specific case on point in another circuit. Why should we go off pioneering, so to speak? We're asking the court to take a closer look at the word action as determined in this case than was determined in other circuits. Maybe where the issues weren't as fully briefed by pro se litigants. Here, we're asking the court to recognize that this circuit has created a differing interpretation of the word action in different parts of the PLRA. If the text of the statute doesn't resolve the issue for you or you urge us to look at the meaning of the word action, how about the purpose of the statute? How about the purpose of 19G? And that was afforded by Burghardt v. Kors Corporation. And it held that the goals of Section 1915G to achieve and curtail the abuse of prisoner-tort, civil rights, and conditions litigation and preserving judicial resources. Now, in that light, what difference does it make whether a complaint is paid or not paid? Well, Your Honor, this court has determined in Abdul-Akbar that there's a causational relationship between the flood of litigation that has come from prisoners since the 1970s and access to the IFP. Congress concluded, and this court noted, that the reason the federal docket is flooded with prisoner litigation is because indigent prisoners have ready access to that IFP privilege. They have a differing set of incentives, whereas the filing fee will slow down the fee-paid prisoner. It sounds like if you pay for a complaint, it has more merit than if you don't, based on your argument. Based on the quote that I read to you, it didn't seem to make any difference in terms of what Congress sought in enacting 1915G, which is to cut down abuse of litigation. Respectfully, Your Honor, that's a Tenth Circuit case. It's not binding on this court. And this court's logic in Abdul-Akbar, as well as the findings in the Fourth Circuit in Roller, the Fifth Circuit in Adepegbe, and the Ninth Circuit in Andrews v. Cervantes, is more persuasive. They pick up on that testimony of the bill's co-sponsors, Senator Kyle and Senator Doyle, that IFP prisoners have no economic downside to filing, whereas somebody who pays for their own complaint must, in the words of Senator Kyle, think twice to determine if that lawsuit is worth the price. Senator Doyle also said that prisoners will litigate at the drop of the hat, simply because they have little to lose and everything to gain. So you could argue that really his intention, as expressed by those words, was to reduce frivolous litigation, whether it was paid for or whether it was IFP. That's right, Your Honor. We do agree that Congress's intent was to reduce frivolous litigation. But we can see by the remedy that they crafted, cutting off access to the IFP provision, that it's aimed at IFP filers. But why should we rely on statements from Senators Doyle and Kyle? I just got done finish reading Justice Scalia's book on statutory perpetration. And he cautions never to – you look at the statute, you don't go into all the so-called tools that we were all taught in law school as to what the statute means. You just look at the words. And especially since neither of them dealt specifically with the very issue which is before this panel, why should we go for something like that? Well, Your Honor, that's right that you only have to look at the words if the words themselves are clear. But in this case, the word action isn't clear. And so we must look to tools beyond that which are found in the statute. We look to the structure. We look to the neighboring sentences. And we look to what happened when the bill was passed. Now here – What is an action? What is an action? Civil action or an action? What is an action? How do you define it? I'd call an action a civil lawsuit. But this Court has already carved out habeas actions, which are technically civil actions but not – I'm sorry, Your Honor. I see my time has expired. So the word action means civil lawsuit. But in this context, in the PLRA, it may not include all civil actions, and that is our position. Because the language is not clear, because the neighboring sentences, the structure of the penalty and the congressional testimony support a finding that IFP actions are alone included in the word action in 1915G, we urge this Court to find that fee-paid complaints are not strikes. Thank you, Your Honor. I'm always tempted to take a little peek at what Congress wants. One last reporting to Justice Scalia. Don't cheat. Indeed. It seems like your argument seems to favor those who can afford to pay for complaints versus those who cannot, doesn't it? In other words, if you can afford to pay for a complaint, to pay for a complaint, it doesn't count as a strike. But if you cannot pay for a complaint and you go IFP, then it does count as a strike. Well, these are two separate tracks of prisoners. There's no favoring. On the one side, if you can pay for your complaint, then that fee itself serves as an economic disincentive to file abusively, whereas if you're an IFP filer, the specter of strikes serves as the disincentive there. And in the converse, the court can reach out to fee-paid filers and sanction them with monetary sanctions or stop them from abusive filing should that become a problem, whereas a monetary sanction doesn't matter to an IFP filer because if you impose sanctions against them, they may not have any money to pay it anyways. That's why strikes are the appropriate remedy for the IFP filer and fees and sanctions are the appropriate remedy for the fee-paid filer. Very good, Ms. Trella. Thank you very much. Thank you, Your Honor. Back on rebuttal. Ms. Scanlon. Good morning, Your Honors, and may it please the Court. My name is Alexandra Scanlon, and I will be arguing that Bird v. Gillis is not a strike because it was dismissed in part on the non-strike ground of immunity and because the Court did not expressly label the appeal as frivolous. Why should we follow our well-reasoned language in Grayson? Your Honor, the reason here is that a dismissal, as this Court did, without merit and pursuant to 1915e2b is unclear because the Court did not expressly find that the dismissal was frivolous, malicious, or it failed to state a claim. Further, we know that Bird v. Gillis was dismissed in part on the non-strike ground of immunity, which is the fourth classification of dismissals permitted under 1915e2b. Mr. Bird filed three types of claims, state law claims that were dismissed on 11th immunity grounds, federal 1983 claims that were dismissed because he failed to exhaust his administrative remedies under 1997e, and lastly, due process claims that were precluded by Sand and v. Conner. Well, one way of interpreting a statute is where it's found, and why should we limit 1915g to inform-a-pauperous because it's right in the proceedings inform-a-pauperous, the statute itself is inform-a-pauperous. As my co-counsel had explained in the original portion of our argument, we should not limit 1915g to inform-a-pauperous complaints in light of the statutory structure, congressional testimony, and this Court's instruction in Grayson. However, I'm here arguing today that Bird v. Gillis is not a strike and that regardless of what this Court finds, whether IFP or fee-paid complaints count as strikes, Mr. Bird has not accrued to strikes because the third strike, the potential strike that this Court had identified in its order, expanding the scope of our representation, was Bird v. Gillis. What's your best case to support your position? The best case to support our decision is Thompson. Thompson has instructed that a 1915e to b dismissal is not a presumptive strike. What was the basis for dismissal in Gillis? The basis for dismissing Gillis, like I said, Your Honor, was that he had three claims. Due process claims were dismissed under Sandin v. Conner. His federal claims were dismissed because he'd failed to exhaust his administrative remedies under 1997e, and Mr. Bird's state law claims were dismissed on 11th Amendment immunity grounds. There was no language there about dismissal because of failure to state a claim or because the matter was frivolous? Right. The magistrate judge had found those substantive reasons for dismissing his claims. Mr. Bird appealed to this Court, which dismissed the action as, and I quote, without merit and pursuant to 1915e to b. Can we deem the failure to exhaust administrative remedies as filing a meritless, baseless, perhaps even frivolous complaint? Absent an express finding of such, the Seventh Circuit has instructed in Hari v. Lemon that we cannot read into a dismissal a grounds for dismissal that was not stated, especially when it interferes with a prisoner's ability to file a lawsuit.  Any further questions? Thank you very much. Thank you. Mr. Dorian? Good morning, Your Honor. My name is Raymond Dorian. I'm with the Office of Chief Counsel for the Pennsylvania Department of Corrections, and I'm here to argue on the three strikes interpretation solely. I will not address the merits of the underlying case. Basically, the statute is clear. The plain language should be applied in this case. There's no limitation on what is a dismissal or strike under 1915g, and the Court should not impose such a limitation where none exists. Well, the Tenth Circuit didn't find it that clear in, was it, Jennings? Yes, Your Honor, but I believe the weight of the circuits, the Duval case, the Burghardt case, and the Hyland case, all three have very persuasive language, and including Judge Posner wrote that even though, in theory, someone who paid the fee would most likely have more seriously considered before he filed, there's nothing in the statute itself to warrant such an interpretation. I don't rebound by Grayson, though. No, Grayson, I believe, is not on point at all, Your Honor. Grayson had to do with whether or not the trial court should grant leave to amend under the PLRA. What about Santana? The Santana case, that had to do with what is an action, whether or not habeas corpus proceedings constitute an action under the three strikes provision. That, I put it to you, was fact-specific to what is a habeas, and habeas corpus petitions are a unique breed of petition. They're not so unique. We have them all the time. The court lists them on the civil docket. Yes, Your Honor, but… They're listed on the civil docket, not a criminal docket, and they're called civil actions. Well, it's sort of a hybrid action, as they say. There's no criminal involvement at all. It's strictly a civil action. A man is convicted, he's guilty, and he comes in for a civil action to be found, he should be released for civil purposes. Well, it's an attack on the legitimacy of the criminal sentence. But anyway, the… But the Congress didn't say in the statute except for hybrid action. That's correct, Your Honor, and I put it to you that the Santana case is specific to the unique situation of what is a habeas corpus, and also they point out that there is a… Yeah, but doesn't it at least cut against your argument that the statute is clear? Your Honor, to that particular extent, yes. But what the appellants would have this court do is to read into this particular statute, this particular section, 1915G, a limitation was not there. Now, the courts have indicated they will not read into 1915G what additional grounds for what constitutes a strike. I put it to you, you should not read into limitations as to what's a strike. And they've talked about the effect and the intent of Congress, the effect of these frivolous lawsuits. I put it to you that a frivolous lawsuit is a frivolous lawsuit, whether it's filed by someone that paid the fee or someone that did not pay the fee. Yeah, but that doesn't cut the issue. You know, we have a district court that has so many tools to deal with frivolous lawsuits and frivolous motions that the frivolity in the district court now is dealt with through a number of mechanisms which you don't need any statutes to deal with it already. No, I agree, Your Honor, that the courts have inherent power to control their dockets and to sanction… So what do you need this for if you can already deal with it? If this is putting a blanket over a man that's already had a blanket over him, he's already dead. It's a non-issue, frivolous lawsuits. Well, Your Honor, if you take that position, I guess we should throw the whole Prison Litigation Reform Act out the window. But the Congress deemed that it was fishing up a problem that they needed to issue this statute, and I believe it should be given the full effect that was intended by Congress. They did not intend to just attack a certain number of frivolous filers, but they intended to deal with both those who paid and those who did not pay. And now, the other side of the amicus council has cherry-picked various quotations from the correctional record, and frankly, the correctional record is very sparse on this issue. There's no statement in there that says strikes… Well, you don't even want to get there, do you? Our position is that under the plain language of the statute, there's no need to look at the congressional record. What about the Byrd v. Gillis question? On that issue, Your Honor, I believe the court specifically said in their opinion, the Third Circuit, that this appeal was without merit and was being dismissed pursuant to 1915… Without merit, you said let's look at the statute, but without merit isn't listed as one of the three categories for a strike in the 1915 sheet. Well, it says frivolous, malicious, and failure to state a claim. That's fine. I understand those, but I don't understand without merit as being a basis for a strike. Well, I will put it to you, Your Honor, that failure to state a claim is based on 12b-6, and that has to do with the trial court level and the complaints. I would say analogous to that on the appellate court level would be saying that the appeal was without merit. I don't know. That's not necessarily true. You may have a good case, and I can reason my way through your case, but you don't win, so I'm going to say it's without merit. That doesn't mean it's frivolous, though. Well, they specifically referred to the panel that dealt with Byrd v. Gillis, specifically cited to a 1915 E-2B. Now, they didn't go ahead and say, well, which particular subsection, but clearly their intent was to dismiss it under that section of the PLRA. You don't draw any distinction between a case that's dismissed as being frivolous and one that's dismissed as being without merit? Of course there's a difference, Your Honor, and something has no basis whatsoever in the fact that it is frivolous, and someone has an argument that the basis, in fact, of all could state a claim and still be dismissed under 12B-6. But actually, if you look at the – However, let me just press that point. If we were to conclude that Gillis was not dismissed on one of the grounds listed in 1915-G, then that would mean that he would only have two strikes, not three. Is that correct? It's agreed that he has two fee-paid strikes. Well, he has two strikes, whether paid or not. Right. Will he have a third? The one that's in dispute or that the amicus council says is unclear is the Gillis v. Byrd, Byrd v. Gillis. But if you read that opinion, what it's saying is that this base, the underlying case was dismissed for failure to state a claim, even though it was phrased as a motion for summary judgment. Because they say, understand then, he failed to state a due process claim. And under the O'Neill case, they talk about whether or not the decision has a fully sufficient basis or whether failure to state a claim is a fully sufficient basis for the decision. I put it to you that in putting aside the immunity part of the decision and the failure to exhaust part of the decision, that you could also find under the underlying Byrd case, Byrd v. Gillis case, that it was dismissed for failure to state a claim. Actually, you know, I thought that one of the good things about 1915G is that you don't have to read the opinion. You just look at the decision. Well, Your Honor, I put it to you that by citing, too, the specific 1915E2B in the Byrd v. Gillis decision, the panel meant to say it was one of those three bases and that it should count as a strike. What relevance does 15A have, the provision have, to a totally separate provision governing informal corpus filings? It's separate. Why are the two related? Well, Your Honor, I don't think I have related them, but the intent of both of them is to deal with frivolous lawsuits, and the one has to do with screening. Yeah, but informal corpus deals with informal corpus, and 1915A just deals with screening. It has nothing to do with informal corpus as such. Well, I think by failing to limit the scope of the screening provision, 1915A, to just IFP cases, I think that's consistent with our interpretation in 1915G, that the Congress meant to deal with the issue itself. The issue was not IFP inmates particularly. The concern was with wasteful and burdensome litigation tying up the courts and tying up the state governments. Aren't we engendering here some class litigation here between people who pay and people who don't pay? I mean, there's a difference. Class warfare almost. Treat them both the same. One person pays, the other doesn't. Why should we treat them the same when there are two different types? One's paying, one's not. Well, Your Honor, the Congress, as you indicated, that sometimes it's best just to read the plain language of the statute. And I put it to you, if Congress had intended to limit the scope of the three-strike provision to those who just were IFP, they could have easily done so, but they did not. And that's what Judge Posner and Duval points out, that there is no such limitation. Well, contrary wise, they didn't include it either. They didn't say it one way or the other. That's correct, but the plain language would apply to both. They're different sections. They're not in the same section. One deals with informal corpus, the other deals with screening. Well, Your Honor, I was focusing on 1915G when I was speaking about that. Why don't you cite to our case of Deutsch versus somebody, Deutsch versus the United States. Doesn't that help you? Doesn't that help your argument? Your Honor, I don't think that was cited in any degree, so I'm not familiar with that case. You haven't seen that case? No, I haven't. It seems to me that it might help your argument. It talks about what frivolous is. Well, Your Honor, just to sum up, I think it's clear that there is no limitation within the three-strike provision, and what is frivolous is frivolous, whether or not it's a fee-bait case or an IFP case. And if Congress had intended to make such a limitation, they could easily have done so. And I put it to you it would be an absurd result to interpret this particular section to only apply to IFP inmates because then someone who paid the fee could file unlimited numbers of frivolous and malicious and lack of merit matters and clog up the courts. The danger or the harm is equal, whether or not someone paid the fee or did not pay the fee. And there is no base, no clear indication in the Congressional record about this particular section, whether it was IFP-based strikes or non-IFP-based strikes. And there's no reason to impose such a limitation, even though the court may feel that may be the better policy. That's not the role of the court to impose its own policy considerations on interpreting statute. The idea is to apply what was the intent of the Congress and the plain meaning of the language. I also would argue that the three circuits that have addressed this issue have very persuasive language in their opinions of Duval case and the Burkhardt case and the Heinlein case, in particular Duval where the court indicated that just because someone paid the fee, you may think that he more seriously considered the merits of the case before he filed, but that does not mean that that's not a sufficient reason to interpret the language of the statute in that way where there is no specific limitation. And finally, as far as the Gillis v. Byrd decision, I believe read in its entirety, it should count as a strike because it specifically says this appeal is without merit. We find that this appeal is without merit. Your argument invites the idea that we have to read these opinions from front to back in order to determine the basis for dismissal and whether it comports with 1915G, which doesn't make sense. Well, Your Honor, that sometimes is necessary because obviously the defendant has the burden to prove the strike, so he has to come up and display the strikes to the court. Sometimes it may not be as clear as you would have it. But I would say that if we read the totality of the opinion in Gillis, Byrd v. Gillis, that they found that there was no basis, no statement of a claim of due process understanding, which is a failure to state a claim, which I would say would be equivalent to a strike under 1915G. And by citing the specific section of 1915E2B, the court meant that they wanted to affirm the appeal on one of those three bases. So I ask that you find in favor of the appellee's position. Thank you, Mr. Dorian. Ms. Trello. You know, on your argument, I was thinking about the IFP. Once in a blue moon, you get an IFP case that has merit, that relief is granted and is good. But I've never met a frivolous case that I've liked. So I'm wondering if that – why doesn't that suggest to you that the purpose, Congress's purpose, is to get rid of that frivolous, constant, faceless litigation? Well, Your Honor, I'd agree that Congress's purpose was to get rid of frivolous litigation as well as malicious and unmeritorious litigation. But the mechanism that they chose to address that was this IFP three strikes provision. As the Supreme Court noted in Neitzke, not every strike dismissal is completely without merit. There are cases that have come up, 1983 cases, dismissed for failure to state a claim, which have been reversed by the Supreme Court at 9-0. And my answer is that we just don't know. The right mechanism to deal with frivolous complaints, as we have noted, is for the court to employ those sanctions, which are available under Butler or monetary sanctions or, in the case of an IFP filer, a strike. The problem, of course, is that they're very taxing on judicial resources because people do have to read those complaints and dispose of them. And that's what Congress, I think, is concerned about. That's right. And I think that's what the statute is concerned about. And that's why the statute also provides 1915 E-2B pre-screening for these complaints. To address the discussion that you just had with Appellee's counsel, 1915 E-2B has four grounds for dismissing on the pre-screening level. Three of them are strikes found in 1915-G. One of them is a non-strike ground, suing an immune defendant. So I just wanted to clarify the difference between those two statutory provisions. Furthermore, to address your questions to Appellee's counsel about Grayson and Santana, we only rely on those cases insofar as it supports our argument that the language is ambiguous. The word action was found ambiguous first, and then habeas and those 1983 claims under 1915 E-2B were excluded for different reasons. But that doesn't change our position that the language is unclear. Thank you. Thank you, Ms. Trello. Thanks also to Drexel University Law School for helping us out with these cases. The arguments were very well presented. All around, we'll take the case under review. Thank you very much.